UNITED STATES, Appellee,

v.

James C. MILBURN, Specialist Four, U. S. Army, Appellant.

No. 33,596.
SPCM 12217.

U. S. Court of Military Appeals.

Dec. 3, 1979.

For Appellant: *Captain Ralph E. Sharpe* (argued); *Colonel Robert B. Clarke*, and *Lieutenant Colonel John R. Thornock* (on brief).

For Appellee: *Captain Richard A. Cefola* (argued); *Major John T. Sherwood, Jr.*, and *Captain Richard A. Kirby* (on brief).

FLETCHER, Chief Judge:

Contrary to his pleas, appellant was found guilty of the offenses of wrongful possession and sale of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The military judge at this special court-martial sentenced him to a bad-conduct discharge, con-

finement at hard labor and forfeiture of $200 pay per month, both for a period of 5 months, and reduction to the lowest enlisted grade. The United States Army Court of Military Review affirmed this conviction without an opinion on November 30, 1976.

The appellant's record of trial indicates that prior to his court-martial, a fellow soldier named Ellis was charged with similar drug offenses stemming from the same incident. Prior to assignment of counsel to the appellant and, apparently, to discovery by authorities of his involvement in this incident, Ellis' defense counsel, on the advice of his own client, approached Milburn to interview him on his role in the commission of the crimes. He purposefully failed to warn Milburn of his rights under Article 31, UCMJ, 10 U.S.C. § 831, in hopes of both eliciting responses from the appellant which would exculpate his own client and encouraging his testimony at Ellis' trial. During several interviews, the appellant revealed his role in the offenses to this military officer and discussed with this counsel his liability to prosecution within the provisions of a drug exemption program. The record is attenuated and ambiguous as to Milburn's understanding of his rights as well as the voluntariness of his statements to this counsel.

The appellant was later called as a witness for the defense at the Ellis trial by this same defense counsel. It appears from the argument of counsel in the record before us that the military judge at the Ellis trial gave no warnings under Article 31 to the witness Milburn. It also seems that Milburn made several self-incriminating admissions at this court-martial and the trial counsel specifically requested that the military judge give the appropriate warnings. In any event, after this court-martial, the appellant approached Ellis' defense counsel and requested that he represent him at his own court-martial. This counsel declined to represent Milburn. Later, appellant's appointed defense counsel at his court-martial moved to suppress the testimony of Captain Noll, the trial counsel at Ellis' court-martial, as to the content of the appellant's previous admissions. A brief hearing was held on the motion in which Ellis' defense counsel, as a witness for the Government, testified to the circumstances surrounding the appellant's testimony at the earlier court-martial. The military judge denied the motion. He stated in part:

> [i]t probably would have been better practice for the trial judge to have advised the accused once it became apparent that he was going to incriminate himself, of his rights against self-incrimination . . . . I just feel that the state of law is at this time that there was no requirement for a warning on the part of anyone to the accused prior to this [sic] testifying voluntarily as a witness at trial for Specialist Ellis.

The ultimate issue to be decided on this appeal is whether the military judge at Milburn's court-martial properly denied the defense counsel's motion to suppress the testimony of Captain Noll recounting incriminating admissions purportedly made by the appellant as a witness at the earlier court-martial of Ellis. The legal basis for this motion, as asserted by the defense counsel, was that such testimony served as a vehicle for the improper admission of self-incriminating statements taken from the appellant in contravention of his right under Article 31(b).

Article 31 states in part:

> (b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

> \*     \*     \*     \*     \*     \*

> (d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be

received in evidence against him in a trial by court-martial.

The exact scope of the proscription in section (b) of Article 31 has been subject to much dispute.[1] The crux of this problem over the years has been the sharp disagreement in the Court over the actual intent of Congress in enacting such a loosely worded statute. The facts in the case at the bar clearly call for an interpretation of this section of the Code in respect to the questioning of Milburn by Ellis' defense counsel prior to the first trial.[2] Moreover, Article 31 might also be considered to embrace the failure of the military judge at the Ellis trial to prevent Milburn from being further examined without giving the appropriate warnings under Article 31.[3] Finally, a real question is raised as to the soundness of the military judge's ruling at the Milburn court-martial on this motion in view of the burden on the Government to establish a proper foundation for the admission of incriminating statements given at the first court-martial. *See* Article 31(d).

The resolution of this case however, involves more than examination of the propriety of this judge's action in admitting the challenged evidence in view of Article 31. In addition, issues are raised as to the fairness of a legal system which permits the professional practices of Ellis' defense counsel which precipitated the first admissions made by the appellant and the action of the military judge at the Ellis trial in permitting him to testify under such circumstances without warnings.[4] For Captain Noll's testimony to be found properly admitted, it is necessary that the conduct of both these court officers of the military justice system in securing the admissions from the appellant in the first instance or his later testimony be found in compliance with the letter and spirit of applicable codal precepts, Manual provisions and appropriate military law principles.[5] In particular, either a failure on the part of these officers of the court to comport with Article 31,[6] or meet the required standards of professional conduct to ensure a fair trial in the military

1. *See United States v. Kirby*, 8 M.J. 8 (C.M.A. 1979); *United States v. Dohle*, 1 M.J. 223 (C.M.A.1975); *United States v. Seay*, 1 M.J. 201 (C.M.A.1975) (Ferguson, J., concurring); *United States v. Howard*, 5 U.S.C.M.A. 186, 17 C.M.R. 186 (1954) and *United States v. Gibson*, 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954).

2. In line with previous decisions, I continue to adhere to a judicial interpretation of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, which views the intent of Congress in enacting this statute as primarily concerned with the state of mind of the accused or a suspect as affected by any perceived position of authority in the military held by the questioner. *See United States v. Kirby, supra; United States v. Kelley*, No. 34,013 (C.M.A. 1979); *United States v. Dohle, supra*. It is not my intention at the present time to adopt an excessively narrow interpretation of this codal provision which would emaciate its protection on the basis of conjectural assumptions. *See United States v. Howard, supra*. Nor am I presently satisfied with an overly broad and seemingly impractical interpretation of the scope of this provision. *United States v. Kirby, supra; United States v. Seay, supra*. It is clear in the present case that the defense counsel was superior in military relationship to Milburn. He requested statements from this enlisted man in an official investigation of a crime. Moreover, he obviously sus-

pected Milburn of a crime and that his answers would be incriminating. Accordingly, under these facts, the warnings appear to be required under Article 31(b). This is not to say that all defense counsel must warn all witnesses whenever requesting statements. However, whenever the accused or a suspect could perceive that the position of authority of these officers is the moving force behind requiring possible incriminating answers to these questions, the warnings must be given. In the present case, based on the record of trial, it is clear that the defense counsel of Ellis should have warned the witness Milburn, and his failure to do so renders the statements inadmissible.

3. *See United States v. Howard, supra* at 196, 17 C.M.R. at 196 (Quinn, C. J., concurring); *United States v. Gibson, supra* at 763, 14 C.M.R. at 181 (Latimer, J., concurring in the result); para. 150*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

4. Para. 140*a* (2), Manual, *supra*.

5. *See United States v. Enloe*, 15 U.S.C.M.A. 256, 35 C.M.R. 228 (1965); *United States v. Smith*, 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962).

6. *United States v. Kirby, supra; United States v. Dohle, supra*.

justice system [7] may, in the view of this Court, require reversal of Milburn's conviction.

Regardless of one's interpretation of the statutory language of Article 31(b), the warnings should have been given on the facts in the present case as a matter of fundamental fairness [8] guaranteed in the military justice system. The professional obligations for the practice of law in the military justice system as listed and incorporated by reference in the Manual for Courts-Martial, United States, 1969 (Revised edition) and numerous court decisions mandate as much to protect this particular accused from being an unnecessary victim of the peculiarities of the military society. In addition, this Court must take action to guarantee a fair trial where the principles of fundamental fairness embodied within the military justice system as a whole are apparently frustrated by conflicting Manual provisions.

■ More particularly, a defense counsel in the military justice system will perform such duties as usually devolve upon the counsel for a defendant before a civilian court in a criminal case. *See* para. 48c, Manual, *supra*. It is beyond cavil that such counsel must represent his client zealously and regard the latter's interest as paramount. However, as an officer of the court he must shape his representation in accordance with "honorable and legitimate means known to the law." [9] In the civilian society it is considered proper, but not mandatory, that a defense counsel advise a witness of his rights against incriminating himself.[10] But, in the military society, a defense counsel, besides being the representative of the accused, is a military officer performing assigned duties when requesting incriminating statements from a witness. In most cases, as in the one before the bar, the person being questioned is an enlisted member subject to military discipline and conditioned to respect military positions of authority.[11] Additional responsibilities may be placed upon counsel as a result of his position in military society and his role as an officer for this particular court. Indeed, the Manual reflects this greater responsibility for counsel in the military justice system by expressly referring them to Article 31, UCMJ, when interviewing witnesses. *See* para. 42c, Manual, *supra*. Accordingly, in such a situation where incriminating statements are deliberately sought from a witness suspect unrepresented by counsel, it is required as a matter of military due process and fundamental fairness that appropriate warnings be given by the questioning defense counsel.

A lesser standard of conduct by defense counsel toward such an obvious potential accused runs counter to the uniform approach of fairness guaranteed to all by the military justice system. No premium should be paid in our legal system for lack of candor on the part of its court officers. The statements originally requested by Ellis' defense counsel were taken in violation of this Manual provision designed in part to ensure a fair trial. The appellant was substantially prejudiced within the meaning of Article 59(a), UCMJ, 10 U.S.C. § 859(a).

■ In addition, the relationship between Ellis' defense counsel and Milburn assumed an appearance of impropriety, especially after this counsel's testimony on behalf of the Government at Milburn's trial. We are particularly struck by these facts: that Milburn was unrepresented by counsel at the time of his original admission and testimony; he was confused over the question of his liability to criminal prosecution and discussed it with this counsel; and he sought out the same defense counsel after Ellis' trial for his own representation. Any ambiguity in these facts must be resolved in

---

7. *United States v. Hemp*, 1 U.S.C.M.A. 280, 3 C.M.R. 14 (1952); *United States v. Clay*, 1 U.S.C.M.A. 74, 1 C.M.R. 74 (1951).

8. *United States v. Jackson*, 5 M.J. 223 (C.M.A. 1978).

9. Para. 48c, Manual, *supra*; ABA Standards, The Defense Function § 1.6 (1971).

10. ABA Standards, *supra*, § 4.3(b).

11. *See generally United States v. Dohle, supra.*

favor of the accused.[12] Reversal is warranted to avoid even the appearance of such patently unfair treatment in the military justice system.[13]

■ There is also a question raised as to the propriety of the conduct of the military judge at the Ellis court-martial in not warning the witness Milburn of his right against self-incrimination and the potential use of such answers against him at a later court-martial. We are, of course, mindful of the language in paragraph 140a (2), Manual, *supra*, which indicates such warnings do not generally apply to the questioning of a witness at trial. Yet, such a provision cannot reasonably be interpreted to obviate in all cases, the concurrent Manual responsibility of the military judge to warn an apparently uninformed witness of his rights where answers to questions may clearly tend to incriminate him. *See* para. 150*b*, Manual, *supra*. In the present case, the record is insufficient for this Court to properly assess this military judge's conduct in response to this Manual responsibility. However, if the facts apparent to the military judge were as indicated in this opinion and the trial counsel requested warnings as purported in the argument of counsel, we would also require,[14] as a matter of military due process, that appropriate warnings be given.[15]

■ Finally, it suffices to say that we believe that the ruling of the second military judge at the court-martial of the appellant is unresponsive to his affirmative obligation to assure the accused before him a fair trial. *See United States v. Graves*, 1 M.J. 50, 53 (C.M.A.1975). It is clear from his ruling that he concluded that the appellant as a witness at the earlier court-martial had been unfairly treated. Yet, he failed to act to protect the appellant from the perpetuation of this unfairness because of his perception of an apparent conflict between the previously cited Manual provisions. Such motivated inactivity drastically undermines his authority and responsibility as a military judge to ensure a military accused a fair court-martial, and cannot be condoned.

In conclusion, the finding and sentence as approved by the United States Army Court of Military Review are set aside. In the interest of preserving fairness within the military justice system and in view of the total absence of any other evidence in the record of trial linking the appellant to this crime, the charges are dismissed.

Judge PERRY * concurs.

COOK, Judge (dissenting):

The majority acknowledges that a trial judge has no obligation to advise a witness preliminary to his testimony that he has a right against self-incrimination. That is the civilian rule, and it is the rule in the military courts. *United States v. Ballard*, 8 U.S.C.M.A. 561, 25 C.M.R. 65 (1958); *United States v. Howard,* 5 U.S.C.M.A. 186, 17 C.M.R. 186 (1954). If the military judge has no affirmative responsibility to warn a witness as to his right against self-incrimination, I cannot see how a defense lawyer's ill-defined role as an officer of the court requires him to give such advice to a witness adverse to his client's cause. The fact of the matter is, defense counsel is not an agent of the Government, but an advocate for the accused. I see no justification for imposing on him an obligation to preface his pretrial questioning of a government witness with advice that the witness has a right to remain silent. I would affirm the decision of the Court of Military Review.

12. *United States v. Simmons*, 3 M.J. 398, 399 (C.M.A.1977).

13. *See United States v. Jackson, supra; McPhail v. United States*, 1 M.J. 457 (C.M.A. 1976); and *Gale v. United States*, 17 U.S.C. M.A. 40, 37 C.M.R. 304 (1967).

14. *See also* nn. 6 and 7, *supra*.

15. ABA Standards, The Function of the Trial Judge § 5.4 (1972); para. 39*b*, Manual, *supra*.

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.