UNITED STATES, Appellee,

v.

Brent C. WATTENBARGER

Mess Management Specialist
Third Class,

U.S. Navy, Appellant.

No. 46778.

NMCM 82 0461.

U.S. Court of Military Appeals.

Nov. 18, 1985.

For Appellant: *Lieutenant J. Cunyon Gordon, JAGC, USN* (argued); *Lieutenant Commander Jeanne Carroll, JAGC, USN, Major Patrick H. McGann, Jr., USMC, Lieutenant Mark A. Zuboff, JAGC, USNR,* (on briefs); *Lieutenant Colonel M.W. Lucas, USMC* and *Captain W.J. Ciaravino, USMC.*

For Appellee: *Lieutenant Commander John B. Holt, JAGC, USN* (argued); *Captain W.J. Hughes, JAGC, USN; Lieutenant Commander W.A. Dorsey, JAGC, USNR;* and *Lieutenant Thomas J. Demay, JAGC, USNR-R.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial composed of members and a military judge during September 1981 at the Naval Legal Service Office, Guam. Contrary to his pleas, he was found guilty of assault with intent to commit rape, assault with a means likely to produce grievous bodily harm, and housebreaking, in violation of Articles 134 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 930, respectively. He was sentenced to a bad-conduct discharge, 5 years' confinement at hard labor, total forfeitures, and reduction to pay grade E-1. The convening authority approved this sentence, and the Court of Military Review affirmed. 15 M.J. 1069 (1983).

This Court granted review on the following issue:

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY HIS COMMAND.

Although we find that counsel was not timely provided, we hold that appellant was not denied effective assistance of counsel at trial. Accordingly, we affirm.

Appellant asserts that he was denied effective assistance of counsel as guaranteed by both the sixth amendment of the Constitution and by military due process. *See generally United States v. Jackson*, 5 M.J. 223 (C.M.A.1978). He acknowledges that he was represented by counsel at his court-martial and for a period of six months prior to it. Nevertheless, relying on the decisions of the Supreme Court in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), he contends that this legal right was violated when command failed to provide him counsel during an earlier 3-and-½-month period. Appellant argues that this period was a critical stage of the pretrial proceedings against him. He asserts that command must appoint counsel for an accused declared mentally incompetent to assist in his defense, especially when it pursues an active course of prosecution

against him. *See Timmons v. Peyton*, 360 F.2d 327 (4th Cir.1966). Such a denial of counsel, he intimates, is presumptively prejudicial and requires reversal of his conviction because the likelihood of effective representation at trial by any lawyer under these circumstances is so small. *See United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984); *United States v. Jackson, supra.*

In response to these assertions, we hold: First, command authorities did not provide appellant with assistance of counsel in a timely fashion prior to his court-martial. Second, appellant was without counsel during a period in which a substantial threat existed as to his later ability to receive a fair trial, a so-called "critical stage." Third, no presumption of prejudice exists in the present case. *Cf. Powell v. Alabama, supra.* Last, we find beyond a reasonable doubt that there was no prejudice of any kind, transitory or permanent, resulting from this delay which impacted on the ability of counsel to adequately and effectively represent appellant at this court-martial. *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

The facts surrounding the granted issue are numerous and are detailed in full in Appellate Exhibit VI, a stipulation of fact accepted by the parties at trial. This stipulation of fact is attached as an appendix to this opinion. In addition, the Court of Military Review recounted the facts of this case in its opinion (15 M.J. at 1071–73) so no further detailed narrative on our part is necessary. However, to place the granted issue in the proper perspective, a brief outline of the facts of this case is appropriate.

The offenses for which appellant was found guilty occurred on December 4, 1980. Australian authorities arrested appellant that same day and placed him in pretrial confinement until December 9, 1980. On that day, Australian authorities waived jurisdiction and surrendered him to American military authorities at the U.S. Naval Communication Station, Harold E. Holt. Command authorities placed appellant in pretrial confinement where he remained until

December 22, 1980. The local command ordered a sanity board examination of appellant on December 19, 1980. A report was issued on December 21, 1980, which concluded that appellant was then mentally incompetent to cooperate with defense counsel and recommended psychiatric treatment. Appellant was medevaced to Tripler Army Hospital, Hawaii, on December 23, 1980. A second sanity board examination was held on January 13, 1981, and it found appellant mentally incompetent to stand trial and at the time of the offense. It recommended further psychiatric treatment, and appellant was transported on January 25, 1981, to the National Naval Medical Center in Bethesda, Maryland. On March 10, 1981, a third sanity board was conducted and found appellant competent to stand trial. He was then confined at the Marine Corps Brig at Quantico, Virginia, and later transported to Guam, the situs of his trial.

Appellant first consulted with counsel on March 26, 1981, and he was released from pretrial confinement on that day. After two more command-ordered sanity examinations, appellant was brought to trial before the members on September 21, 1981.

## I

### *Was counsel provided in a timely fashion?*

 The first question we address is when did appellant's right to counsel under the sixth amendment attach. *See Estelle v. Smith*, 451 U.S. 454, 470, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981). This constitutional right to counsel does not attach until "at or after the time that adversary judicial proceedings have been initiated against him ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 688, 689, 92 S.Ct. 1877, 1881, 1882, 32 L.Ed.2d 411 (1972) (plurality opin-

ion), cited with approval in *Estelle v. Smith, supra*, 451 U.S., at 469, 470, 101 S.Ct. at 1876, 1877.[1] In the military, this sixth-amendment right to counsel does not attach until preferral of charges. *See United States v. Adams*, 21 U.S.C.M.A. 401, 405, 45 C.M.R. 175, 179 (1972); *United States v. Moore*, 4 U.S.C.M.A. 482, 486, 16 C.M.R. 56, 60 (1954).

The problem raised in the present case is that the charge sheet included in the record of trial states that the charges of which appellant was convicted were not preferred until March 12, 1981. The critical period for which appellant asserts he was denied sixth-amendment counsel was substantially concluded by that time. Relying on *United States v. Wade, supra*, 388 U.S., at 226, 227, 87 S.Ct. at 1931, 1932, he nonetheless assumes this particular constitutional right is implicated at any critical stage prior to trial. This assumption is highly questionable in view of the Supreme Court opinions in *Kirby v. Illinois, supra*, 406 U.S., at 690, 691, 92 S.Ct. at 1882, 1883, and *Estelle v. Smith, supra*.

Our review of the record, however, indicates that appellant's sixth-amendment right to counsel may indeed have attached much earlier than March 12, 1981. First, military authorities induced Australian authorities to waive jurisdiction and accepted jurisdiction over these offenses on December 9, 1980. Second, appellant, after being placed in pretrial confinement by command, was advised on December 12, 1980, as to his rights at an impending Article 32, UCMJ, 10 U.S.C. § 832, investigation, including his right to counsel. Third, the command requested that lawyers from the Naval Legal Service Office in Guam be made available for this impending pretrial investigation, and lawyers were made available by that office on December 13, 1980. Finally, the report of the doctor who conducted the first command-ordered mental

---

1. Prior to initiation of adversary judicial proceedings, appellant may have also had a constitutional right to counsel under the due process clause of the fifth amendment (*see Kirby v. Illinois*, 406 U.S. 682, 690, 691, 92 S.Ct. 1877, 1882, 1883, 32 L.Ed.2d 411 (1972) (plurality opinion) ), or as a safeguard for his fifth-amendment *Miranda* rights. *See Estelle v. Smith*, 451 U.S. 454, 470 n. 14, 101 S.Ct. 1866, 1877, n. 14, 68 L.Ed.2d 359 (1981). These questions are neither raised nor addressed in the briefs and do not affect our judgment in this case.

examination of appellant refers to a charge sheet dated December 19, 1980.

 In this context, it is not entirely clear when charges had in fact first been preferred against appellant, a situation not confronted in earlier cited military cases. In any event, the test for sixth-amendment purposes is whether adversary judicial proceedings have been instituted against a suspect. Under the facts of this case, we are convinced that appellant's sixth-amendment right to counsel attached within the meaning of *Kirby v. Illinois* and *Estelle v. Smith*, both *supra*, on December 19, 1980, before his command-ordered mental examination.[2]

## II

*Was the period from December 19, 1980, to March 26, 1981, a "critical stage" of the proceedings?*

If this period is shown to be "critical" in the sense of *Powell v. Alabama, supra*, and *Coleman v. Alabama*, 399 U.S. 1, 7–10, 90 S.Ct. 1999, 2002–2004, 26 L.Ed.2d 387 (1970) (plurality opinion), then constitutional error must be deemed to have occurred. *See United States v. Cronic, supra*, 104 S.Ct. at 2047 n. 25. In this regard, we note that a "critical stage" for purposes of the sixth-amendment analysis depends on "whether potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice." *Coleman v. Alabama, supra*, 399 U.S., at 9, 90 S.Ct. at 2003, *quoting United States v. Wade, supra*, 388 U.S. at 227, 87 S.Ct. at 1932.

Appellant concedes that his confinement or status as a prisoner-patient during the period he was denied counsel does not *per se* make it a "critical stage" of the proceedings against him. Instead, he asserts that this period became critical when the first command-ordered sanity board declared him mentally incompetent to cooperate with a defense counsel. He analogizes his status as a mental incompetent during this period to the illiterate defendant in *Powell v. Alabama, supra*; to the unadvised defendant in *United States v. Wade, supra*; and to the incommunicado defendant in *Timmons v. Peyton, supra*. He asserts that a person in such a status without counsel was "literally helpless to confront the awesome power of the Government in conducting and preparing a defense for his upcoming trial."

Appellate defense counsel has fashioned the following "nonexclusive list" of areas where appellant may have been prejudiced as a result of not being represented by counsel during this period:

(1) Demands For Speedy Trial

(2) Demands For Defense Requested Sanity Boards/Private Psychological Evaluations At Or Near The Time Of The Offenses

(3) Opportunities of Appellant To Discuss The Case With Counsel While His Memory Of Recent Events was Still Fresh

(4) Advice Of Counsel To Appellant Regarding His Rights Under Article 31, UCMJ, [10 U.S.C. § 831,] Especially In Light Of Continuous Conversations With Hospital and Medical Personnel Regarding The Incident Which Are *Not Privileged* Communications And Admissible At Trial.

(5) Opportunities For Defense Counsel To Query Members Of The Sanity Board, Just Prior To Or Subsequent To Their Findings In The Hopes Of

---

2. This right to counsel need not be based solely on constitutional grounds. On December 19, 1980, appellant had been in pretrial confinement for more than 48 hours and had requested a lawyer on December 16 and 17, 1980. Under Naval Service Regulations, counsel should have been made available to him within 48 hours of this request. SECNAVINST 1640.9 and JAGMAN 0151. Accordingly, as a matter of military ·

due process, appellant was entitled to assistance of counsel. *See United States v. Jackson*, 5 M.J. 223 (C.M.A.1978). *See also United States v. Hayes*, 19 U.S.C.M.A. 60, 41 C.M.R. 60 (1969); *United States v. Ross*, 19 U.S.C.M.A. 51, 55, 41 C.M.R. 51, 55 (1969). Appellant's earlier decision on December 12, 1980, not to see a lawyer "at this time" did not irrevocably waive his military-due-process right.

Obtaining Statements Which Could Be Used As Subsequent Impeachment At Trial 8–9 Months Down The Road.

(6) Conversations With The Convening Authority and Trial Counsel Regarding Appropriate Disposition of Charges, *i.e.,* Medical Discharge.

(7) Conversation With Australian Authorities To Alleviate Pressures Upon American Military Authorities To Bring An Incompetent Accused To Trial At *All* Costs.

(8) Representation at the Pretrial Identification Lineup.

(9) Disadvantages Suffered With Regards To Compilation of Evidence And Witness Interviews.

It is on this basis that he contends that this period was a "critical stage" of the proceedings for appellant.

In *Powell v. Alabama, supra,* 287 U.S., at 58, 53 S.Ct. at 60, the Supreme Court found that the illiterate defendants were provided no substantial assistance by counsel prior to trial. It presumed potential and actual prejudice in this situation without regard to counsel's performance at trial. *See United States v. Cronic, supra.* In appellant's case and in *Timmons v. Peyton, supra,* the denial of counsel prior to trial was not complete. In this situation, the proper approach is to determine whether this period of the pretrial proceedings could have materially affected his right to a fair trial. *See Coleman v. Alabama, supra,* 399 U.S., at 7, 90 S.Ct. at 2002.

We note that several matters urged by the defense as establishing potential prejudice clearly are unrelated to the period of time at issue in appellant's case. For ex-

ample, Australian authorities had already conducted the pretrial line-up and surrendered jurisdiction over these offenses prior to attachment of appellant's sixth-amendment right to counsel. Accordingly, factors (7) and (8) do not show potential prejudice from untimely appointment of counsel in the present case. Also, the trial judge and the Court of Military Review both denied a speedy-trial motion without regard to the absence of demands for a speedy trial.

The remaining factors listed by appellate defense counsel and appellant's status as a mental incompetent during this period tend to support his assertion that this was a "critical stage" of the proceedings for sixth-amendment counsel purposes. *See Estelle v. Smith, supra,* 451 U.S., at 470–71, 101 S.Ct. at 1876–77; *Coleman v. Alabama, supra,* 399 U.S., at 7–10, 90 S.Ct. at 2002–2004. An argument similar to the Government's—that there was no substantial potential prejudice to appellant's rights during this period because of the exclusionary privilege of Mil.R.Evid. 302 and other confidentiality provisions of paragraph 121, Manual for Courts-Martial, United States, 1969 (Revised edition)—was rejected in *Coleman v. Alabama, supra.* Accordingly, for purposes of this appeal, we hold this was a "critical stage" of the proceedings against appellant during which he was denied sixth-amendment counsel.[3]

### III

*Was appellant prejudiced by the denial of counsel?*

■ The denial of sixth-amendment counsel at a "critical stage" of the proceedings is constitutional error. *See United*

---

**3.** Appellant does not assert that a command-ordered sanity board on the question of his mental responsibility at the time of the offense is *per se* a "critical stage" of the proceedings against him. *Cf. United States v. Hayes* and *United States v. Ross,* both *supra*; *but see Spivey v. Zant,* 661 F.2d 464 (5th Cir.1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). Instead, he avers that the results of two of these boards established that he was not mentally competent to cooperate in his defense,

and this required appointment of counsel during this period to protect his right to a fair trial. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Such an argument is somewhat similar to that in *Timmons v. Peyton,* 360 F.2d 327 (4th Cir.1966), where a "critical stage" of the proceedings was found where a defendant was held incommunicado for three and a half months after an offense in a mental institution at government request.

*States v. Cronic, supra,* 104 S.Ct. at 2047 n. 25. Such error, however, does not *per se* dictate that appellant's conviction be reversed. *Coleman v. Alabama, supra,* 399 U.S., at 11, 90 S.Ct. at 2004; *see generally United States v. Hasting,* 461 U.S. 499, 507–12, 103 S.Ct. 1974, 1979–82, 76 L.Ed.2d 96 (1983). We must decide whether denial of counsel during this three-month period prior to trial was harmless error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[4]

As noted earlier, this case can be distinguished from *Powell v. Alabama, supra,* in at least one important respect. In *Powell,* the Supreme Court found that those defendants were substantially provided no legal assistance prior to trial and no opportunity to prepare their defense. In appellant's case, he was provided counsel on March 18, 1981, and this counsel had approximately six months to prepare for trial which occurred in September 1981. In view of these circumstances, we do not believe that the likelihood of effective assistance of counsel at trial is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. *United States v. Cronic, supra,* 104 S.Ct. at 2047. Accordingly, we reject appellate defense counsel's bald assertion that the failure to appoint counsel during this period was "surely" prejudicial. *See Siverson v. O'Leary,* 764 F.2d 1208, 1217 n. 6 (7th Cir.1985).

■ Appellate defense counsel makes no specific averment of how appellant was particularly prejudiced at trial by denial of counsel during this period. Although the burden is on the Government to show that this constitutional error was harmless beyond a reasonable doubt (*see United States v. Hasting, supra*), no presumption of prejudice, as indicated above, exists in this case. Prior to the court-martial, trial de-

fense counsel addressed this issue but spoke in general terms. The military judge in denying appellant's motion to dismiss commented on the absence of specific prejudice in this case as follows:

MJ: The court initially finds that although there is in the brief and in argument some general allegations of prejudice from the failure of the Government to provide the accused with counsel while he was being treated in these various psychiatric wards, no specific prejudice has been shown. Accordingly, the motion to dismiss all charges and specifications thereunder based on denial of counsel is denied.

We agree. *United States v. Morrison, supra.*

The first point which is clear from the record is that the prosecution did not exploit the period from December 19, 1980, to March 26, 1981, to develop its case on the merits against appellant. *Cf. Timmons v. Peyton, supra.* The prosecution's case at trial was based on the testimony of witnesses and physical evidence discovered by Australian authorities while they maintained jurisdiction over these offenses. The line-up conducted by Australian authorities as part of their investigation took place the day after the offense. Military authorities did take statements from these witnesses, but this occurred after the military received jurisdiction and prior to December 19, 1980, when appellant's right to counsel under the sixth amendment attached. Based on such evidence the Government's case was overwhelming and was not substantially enhanced by any evidence gathered by the prosecution during the period he was without counsel.

The second point which is also clear from the record is that the defense suffered no disadvantage in preparing its case on the merits. *Cf. Timmons v. Peyton, supra.*

---

4. Neither *Estelle v. Smith* nor *Timmons v. Peyton,* both *supra,* can be reasonably construed to require reversal for all sixth-amendment counsel deprivations. *See United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). In *Estelle v. Smith, supra,* the Supreme Court not only found potential prejudice (*id.* at

471–72, 101 S.Ct. at 1877–78) but actual prejudice as well (*id.* at 467, 101 S.Ct. at 1875). In *Timmons v. Peyton, supra,* the court of appeals did not expressly address the issue of potential prejudice but did find actual prejudice in that case.

Defense counsel had unrestricted access after March 26, 1981, to the witnesses and physical evidence gathered by Australian authorities. It also had access to the statements made by these witnesses shortly after the offense and recorded in written form by American military authorities. The physical evidence relevant to this case was also substantially preserved by these authorities and was made available to the defense. Finally, there is no indication in the record that appellant forfeited any legal rights during this period without sixth-amendment counsel which impacted on his trial on the merits. The inability of the defense to challenge the Government's case on the merits against him did not stem from the failure of command to appoint counsel in a timely fashion.

The third point, again clear from the record of trial, is that appellant was not prejudiced by this period without counsel in raising his insanity defense. *Cf. Timmons v. Peyton, supra.* In fact, the defense at trial relied in part on a report from the second sanity board conducted during this period to raise a reasonable doubt as to his sanity at the time of the offense. *See Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985). Although the Government relied on the report of the first sanity board to rebut this defense, it only did so after appellant with advice of counsel utilized at trial expert psychiatric testimony in his behalf. *Cf. Spivey v. Zant,* 661 F.2d 464, 475 n. 18, 477 (5th Cir.1981). In this context, appellant cannot be said to have forfeited any legal rights during this period which affected his insanity defense.[5] *See Cape v. Francis,* 741 F.2d 1287, 1295–96 n. 9 (11th Cir.1984). Moreover, we have examined the defense's cross examination of the psychiatrist who conducted this first board and find it satisfactory. *See United States v. Hayes,* 19 U.S. C.M.A. 60, 41 C.M.R. 60 (1969), and *United States v. Ross,* 19 U.S.C.M.A. 51, 41 C.M.R. 51 (1969). *Cf. Timmons v. Peyton, supra* at 331–32.

We therefore find beyond any reasonable doubt that the denial of counsel during the period of December 19, 1980, to March 26, 1981, was harmless error.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

---

**5.** No argument was made in this case that counsel could have advised appellant that he need not cooperate with these sanity boards in determining his mental responsibility at the time of the offense. *See Estelle v. Smith, supra,* 451 U.S., at 468, 101 S.Ct. at 1875. Moreover, no objection was raised at trial that the results of these examinations were inadmissible on the question of his mental responsibility at the time of the offense on the basis of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, and the fifth-amendment safeguards of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Spivey v. Zant, supra* at 475 n. 18. Appellant, with assistance of counsel, elected at trial to raise the defense of insanity utilizing in part expert psychiatric testimony. *Cf. Estelle v. Smith, supra,* 451 U.S., at 466–67, 101 S.Ct. at 1874–75; *see United States v. Wilson,* 18 U.S.C.M.A. 400, 40 C.M.R. 112 (1969). It was this decision, not his earlier one to cooperate with these boards, which permitted the rebuttal testimony of the first sanity board to be admitted.

APPENDIX

APPELLATE EXHIBIT VI
GENERAL COURT-MARTIAL
UNITED STATES NAVY
WESTPAC SOUTH JUDICIAL CIRCUIT

```
U N I T E D S T A T E S )
 )
 v. )
 ) STIPULATION OF FACTS
WATTENBARGER, Brent C. )
Mess Management Specialist )
Third Class )
United States Navy )
_____)
```

It is hereby agreed by and between the Government and Defense with the express consent of the accused that the following Chronology of Facts is true.

CHRONOLOGY

| DATE | EVENT | ENCL |
|------|-------|------|
| 4 December 1980 | Alleged Commission of Offenses by accused | (1) |
| 4-9 December 1980 | Pretrial confinement, Exmouth Police Station | (2) |
| 4-9 December 1980 | U. S. Navy and Australian Government Discuss primary jurisdiction under SOFA | (3) |
| 6 December 1980 | Initial Recommendations for Psychiatric Evaluation of accused, from NLSO Pearl Harbor | (4) |
| 8 December 1980 | Initial Request for Trial Team, and Psychiatric Evaluation of accused by Harold E. Holt | (5) |
| 9 December 1980 | Australian authorities waive jurisdiction. Accused returned to Harold E. Holt. | |
| 9-22 December 1980 | Accused held in Pretrial Confinement Harold E. Holt | |
| 9 December 1980 | Request for appointment of non-lawyer. Military Magistrate from Harold E. Holt | (6) |
| 9 December 1980 | Military Magistrate Request approved by Commander Naval Forces Marianas | (7) |

| | | |
|---|---|---|
| 10 December 1980 | Waiver of non-lawyer qualifications granted by Navy Jag Washington | (8) |
| 10 December – 26 March 1981 | No magistrates hearing conducted | |
| 12 December 1980 | Accused advised by SJA Harold E. Holt of rights to counsel. NLSO Pearl Harbor informed. | (9) |
| 13 December 1980 | NLSO Pearl Harbor tentatively details Investigating Officer/Detailed Defense Counsel to commence pretrial investigation of accused for week beginning 5 January 1981 | (10) |
| 19-21 December 1980 | CDR Kenneth KAROLS, MC, NAS Barbers Point, a Board certified Psychiatrist, observes accused at Harold E. Holt and concludes accused is presently incapable of conducting his defense or cooperating with counsel in preparation of his defense. CDR Carols recommends four weeks psychiatric treatment of accused. | (11) |
| 23 December 1980 | Accused medevaced to Tripler Army Hospital | |
| 24 December – 24 January 1981 | Accused evaluated and observed at Tripler Army Hospital Psychiatric Ward | (12) |
| 13 January 1981 | Sanity Board Conducted at Tripler determines accused incompetent to stand trial. | |
| 25 January 1981 | Accused medevaced to Bethesda NMC for continued psychiatric treatment. | |
| 25 January – 10 March 1981 | Accused evaluated and observed at Bethesda NMC | (13) |
| 10 March 1981 | Bethesda NMC determines member competent to stand trial | (14) |
| 10-26 March 1981 | Accused transferred to Quantico, Virginia Brig to await determination of where to transfer to stand trial | |
| 12 March 1981 | Request from Harold E. Holt for trial team from NLSO Guam | (15) |
| 12 March 1981 | Charges preferred. | |
| 13 March 1981 | Commander Naval Forces Marianas approves conducting of Article 32 Investigation at NLSO Guam | (16) |

| | | |
|---|---|---|
| 17 March 1981 | Harold E. Holt requests military escorts for accused for transfer from Quantico to Guam | (17) |
| 19 March 1981 | *DA All* Records and reports, service record book, of accused, transferred by registered mail from Harold E. Holt to Guam | |
| 18 March 1981 | LT D. L. Anderson, JAGC, USNR, NLSO Guam made available to represent the accused. LT J. Carver, detailed as Gov't Counsel | (18) |
| 19 March 1981 | Military escorts made available to transfer accused to Guam | (19) |
| 26 March 1981 - Present | Accused arrives NAVSTA Guam, restriction to limits of NAVSTA | |
| 31 March 1981 | Harold E. Holt Appoints investigating officer, and Government counsel for Article 32 investigation. | (20) |
| 30 March 1981 | Detailed Defense, request to travel to Harold E. Holt to interview witnesses | (21) |
| 31 March 1981 | Request is approved. | (22) |
| 31 March - 3 April 1981 | Detailed Defense TAD Subic Bay, Philippines | |
| 4-13 April 1981 | Detailed Defense on leave Philippines | |
| 20 April - 1 May 1981 | Detailed Defense in transit to Australia | |
| 1-5 May 1981 | Detailed Defense Counsel conducts investigation Harold E. Holt | |
| 5-7 May 1981 | Detailed Defense Counsel in transit to Guam | |
| 8-17 May 1981 | Investigating Officer TAD to Subic Bay | |
| 15 May 1981 | LT L. Groce appointed Government Counsel due to LT Carver transfer to SJA billet Harold E. Holt. LT Carver relieved as TC. | (23) |
| 20 May 1981 | First session of Article 32 preliminary investigation convened. | |
| 20 May 1981 | Government counsel requests of Bethesda NMC, Tripler AMC answers to sanity issues not previously supplied. | (24) |

| | | |
|---|---|---|
| 3 June 1981 | Tripler responds. | (25) |
| 4 June 1981 | Bethesda responds | (26) |
| 4 June 1981 | At request of Commanding Officer, Harold E. Holt, CDR Eugene Tinelli, NRMC Guam holds psychiatric evaluation of accused. Although requested to answer all Fredricks questions by Government counsel, due to psychoanalytic school of thought practiced by CDR Tinelli, he is unable to opine on grounds other than present competency of accused. | (27) |
| 5 June 1981 | Government counsel receives results of Psychiatric Evaluation | |
| 8-9 June 1981 | Article 32 Investigation conducted | |
| 10 June 1981 | Investigating officer completes Article 32 Investigation Report. | |
| 15 June 1981 | Report of Investigation received by Commanding Officer, Harold E. Holt | |
| 6 July 1981 | Commanding Officer forwards report of investigation to Commander Naval Forces Marianas | |
| 15 July 1981 | Report of investigation and forwarding Endorsement received by Commander Naval Forces Marianas | |
| 22 July 1981 | Staff Judge Advocate completes Article 34 advice | |
| 22 July 1981 | Commander Naval Forces Marianas approves | |
| 23 July 1981 | Government counsel advises SJA, Commander Naval Forces Marianas as to inconsistencies in two medical boards as to sanity of accused at time of offense. SJA directs Government Counsel to make inquiry as to closest facility to conduct psychiatric evaluation (due to problem previously stated on 4 June 1981) | |
| 23-27 July 1981 | Government counsel makes telephone inquiries at Clark AFB Philippines and NRMC Pearl Harbor and informs SJA of delay which would result | |
| 25 July 1981 | Charges referred. | |
| 29 July 1981 | Commander Naval Forces Marianas request Commanding Officer NRMC Guam to conduct formal 121 sanity board | |
| 19 August 1981 | Sanity Board conducted | |

| | | |
|---|---|---|
| 24 August 1981 | Results of Sanity Board prepared and forwarded to Commander Naval Forces Marianas | (28) |
| 28 August 1981 | Results of Sanity Board forwarded to Government Counsel with direction by Commander Naval Forces Marianas to proceed to trial without further delay. | |
| 28 August 1981 | First available date for defense requested psychiatric witness COL. Chamberlain, MC and government witness LCDR Smyer, MC Determined to be 20 September 1981. | |
| 4 September 1981 | Arrangements for all witnesses prepared by SJA | |
| 11 September 1981 | Government Counsel requests to procede through arraignment on 15 September 1981 | AE III |
| 14 September 1981 | General Court-Martial Judge arrives to Guam | |
| 15 September 1981 | Detailed Defense files speedy trial motion | AE I |
| 16 September 1981 | Motion to dismiss failure to cover Initial Article 39A ICO accused held, accused proceeds through arraignment. | |

LAURA S. GROCE
LT, JAGC, USNR
Government Counsel

DONALD L. ANDERSON
LT, JAGC, USNR
Defense Counsel

Brent C. WATTENBARGER, MS3, USN
Accused

---

EVERETT, Chief Judge (concurring):

Not every pretrial denial of counsel at a "critical stage" requires dismissal of charges or reversal of a conviction. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). However, the Government must establish that this constitutional error was harmless. *Gilbert v. California*, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178, 1186 (1967); cf. *United States v. Remai*, 19 M.J. 229 (C.M.A.1985). On the basis of my examination of this record, I agree with the principal opinion's conclusion that here the Government has carried its heavy burden and has demonstrated that appellant's defense was not impaired by the delay in appointing counsel to represent him.