# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32435

————————————

## UNITED STATES
*Appellee*

v.

## Braxton T. SWAFFORD
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 December 2017

————————————

*Military Judge:* J. Wesley Moore.

*Approved sentence:* Bad-conduct discharge, confinement for 45 days, and forfeiture of $500.00 pay for one month. Sentence adjudged 2 August 2016 by SpCM convened at Sheppard Air Force Base, Texas.

*For Appellant:* Major Allen S. Abrams, USAF *(argued)*; Colonel Jane E. Boomer.

*For Appellee:* Major J. Ronald Steelman III, USAF *(argued)*; Captain Anne M. Delmare, USAF *(on brief)*; Lieutenant Colonel Joseph J. Kubler, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Major Matthew L. Tusing.

*Amicus Curiae for Appellant:* Rebecca I. Naranjo *(law student)*; Andrea M. Piloto *(law student)*; Eric R. Carpenter, Esq. *(supervising attorney)*—Florida International University School of Law.

Before DREW, MAYBERRY, and DENNIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Chief Judge DREW and Senior Judge MAYBERRY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DENNIS, Judge:

A special court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one charge and specification of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. The members sentenced Appellant to a bad-conduct discharge, confinement for 45 days, and forfeiture of $500.00 pay for one month.[1]

Appellant asks this court to set aside his conviction. At the heart of his request is an assertion that his conviction was based on pretrial statements taken in violation of his rights to counsel. In his sole assignment of error, Appellant alleges that his trial defense counsel was ineffective in not filing a motion to suppress the statements. Having reviewed his rights to counsel under the Fifth[2] and Sixth[3] Amendments, we find no violation of these rights occurred. While we hold that Appellant is also protected by an expanded right to counsel under Military Rule of Evidence 305(c)(3), we do not find a violation of that right in Appellant's case. Accordingly, we affirm.[4]

## I. BACKGROUND

This is Appellant's second court-martial for wrongful use of marijuana. His first court-martial (Swafford I) included one specification of wrongful use of marijuana on divers occasions between 1 August and 5 November 2015, as well as one specification of wrongful distribution of marijuana during the same period. Swafford I was tried on 29 March 2016. *United States v. Swafford*, No. ACM S32416, 2017 CCA LEXIS 681 (A.F. Ct. Crim. App. 17 Oct. 2017) (unpub. op.). Prior to his court-martial in Swafford I, Appellant was detailed a military defense counsel, Captain (Capt) PC, who submitted a Notice of Representation on 24 February 2016 to Appellant's commander, the Sheppard Air Force Base (SAFB) legal office, and the Air Force Office of Special Investigations (AFOSI) stating the following:

> 1. This is to inform you that I currently represent, and have an attorney-client relationship with A1C Braxton T. Swafford pertaining to all potential military adverse actions. Conse-

---

[1] The members announced a sentence which included "$500.00 pay for three months." The staff judge advocate's recommendation noted the error in failing to include the required "pay per month" language in the announcement of sentence. Only so much of the sentence as provided for $500.00 pay for one month was approved.

[2] U.S. CONST. amend. V.

[3] U.S. CONST. amend. VI.

[4] We heard oral argument in this case on 24 October 2017 at Florida International University School of Law as part of Project Outreach.

quently, I request that you not interview, interrogate, or question him and that you refrain from requesting any statements, oral or written, unless and until you have contacted me. Furthermore, any prior consent for search, samples or any other procedure is hereby withdrawn.

2. This request is in accordance with the rights afforded by Article 31 of the Uniform Code of Military Justice, Military Rules of Evidence 305(e) and the Fifth and Sixth Amendments to the United States Constitution, as interpreted by case law. Thank you in advance for your cooperation and understanding in this matter.

Appellant subsequently entered into a pretrial agreement (PTA) in which he agreed to plead guilty in exchange for the convening authority's agreement to cap his confinement at six months. There were no other sentencing limitations. Appellant was sentenced to a bad-conduct discharge, confinement for two months, and reduction to E-1. Appellant was ordered to provide a urine sample the same day he entered confinement. This sample tested positive for marijuana and led to a single charge and specification of wrongful use of marijuana on divers occasions between on or about 1 March and 29 March 2016—the charge currently before this court.

AFOSI Detective MB—the same detective who investigated Appellant in Swafford I—received notice of Appellant's positive urinalysis while Appellant was still in confinement for Swafford I. He arranged with the Wichita County Sheriff's Office to transport Appellant to SAFB for AFOSI questioning on 22 April 2016, prior to the completion of post-trial processing in Swafford I.

Detective MB began the interview by showing Appellant the positive urinalysis result and advising him of his rights under Article 31, UCMJ. Capt PC was not present for the interview. Appellant waived his Article 31, UCMJ, rights and declined to have counsel present.[5] Appellant told Detective MB that he did not know why his urine test was positive for marijuana, and suggested the positive 29 March 2016 test might be from his smoking marijuana on 5 November 2015. Appellant further stated that he believed marijuana could stay in a person's system for up to 90 days. Appellant also gave written consent to search his dorm room and his cellular phone.

Detective MB searched Appellant's cell phone and found text messages between Appellant and Airman First Class (A1C) JS. That same day, Detective

---

[5] Appellant's interview was apparently recorded in accordance with AFOSI standard operating procedures. The recording, however, is not included in the record of trial. The evidence of Appellant's waiver was introduced at trial through the cross-examination of Detective MB.

MB interviewed A1C JS. A1C JS told investigators that Appellant was in fact living off-base, that in March 2016 at the off-base residence Appellant showed him a jar holding approximately one ounce of marijuana, and that he had seen Appellant smoke marijuana five or six times in March 2016. The charge in this case was subsequently preferred on 13 May 2016 and referred for trial on 18 May 2016. Capt PC was notified of the new charge and specification and receipted for the referral on 18 May 2016.

Capt PC submitted a written waiver of Appellant's right to submit matters for clemency in Swafford I on 10 June 2016. According to the declaration from Capt PC provided to this court, Capt PC's representation of Appellant concluded upon the waiver submission. The Swafford I sentence was approved as adjudged on 16 June 2016, after Appellant had already completed his term of confinement.

Appellant's trial defense counsel in the case now before us, Major (Maj) AC, began her representation of Appellant "in early July 2016." According to the declaration Maj AC submitted to this court, she knew Appellant was interviewed while in confinement for his previous court-martial, but decided "there was not a reasonable basis for filing a motion to suppress." Specifically, Maj AC believed Detective MB questioned Appellant about new misconduct not related to his previous representation.

At trial, Appellant testified in his own defense. He testified that he used marijuana in the fall of 2015 as a result of stress in his life and was court-martialed. He denied using marijuana in March of 2016. On cross-examination, trial counsel sought to discredit Appellant's denial of misconduct using statements from his April 2016 interview with Detective MB. Trial counsel offered the Swafford I court-martial order—which showed the original trial involved the use *and distribution* of marijuana—to rebut the premise that Appellant's crimes were stress induced.

## II. DISCUSSION

Appellant alleges he was denied the effective assistance of counsel under the Sixth Amendment protections outlined in Mil. R. Evid. 305(c)(3).

In an allegation of ineffective assistance of counsel, "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Appellant must show his trial defense counsel was not only deficient, but that the deficiency prejudiced his defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Counsel is deficient when representation falls "below an objective standard of reasonableness." *Id.* (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, Appellant must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

Consistent with this principle, our superior court has stated, "[w]hen a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. Jameson*, 65 M.J. 160, 163–64 (C.A.A.F. 2007) (quoting *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)) (internal quotation marks omitted). As applied to this case, Appellant must establish that his right to counsel was violated. We review such claims de novo. *United States v. Gutierrez*, 66 M.J. 329, 330–31 (C.A.A.F. 2008).

Within the military justice system, the right to counsel stems from multiple sources: the Fifth and Sixth Amendments, the Military Rules of Evidence, and the published decisions of this and our superior courts interpreting these rights. "While the protections afforded an accused by these sources may overlap, they are not coextensive and require independent analysis." *United States v. Kerns*, 75 M.J. 783, 788 (A.F. Ct. Crim. App. 2016)*; see also United States v. Evans*, 75 M.J. 302, 305 (C.A.A.F. 2016). In order to assess whether Appellant's motion to suppress would have been successful, we will review the merits of each of these rights to counsel, as interpreted by precedent, in turn.

We begin with the Fifth Amendment. Under the Fifth Amendment, the right to counsel is invoked once an accused unequivocally requests counsel in a custodial setting. *See Arizona v. Roberson*, 486 U.S. 675 (1988). Once invoked, the right may be waived under any one of three circumstances: (1) counsel is present; (2) the accused person initiates communication with law enforcement; or (3) 14 non-custodial days have passed since the invocation. *Maryland v. Shatzer*, 559 U.S. 98, 104–11 (2010) (citing *Edwards v. Arizona*, 451 U.S. 477, 484 (1981)) (additional citations omitted). Here, Appellant was properly advised and intelligently waived his right to counsel. Thus, Appellant concedes, and we agree, there was not a Fifth Amendment violation in his case. *See United States v. Finch*, 64 M.J. 118, 125 (C.A.A.F. 2006).

Next, we turn to the Sixth Amendment right to counsel, which includes elements similar to and distinct from the Fifth Amendment. Like the Fifth, a Sixth Amendment right to counsel may only be invoked by an affirmative request for counsel. *Montejo v. Louisiana*, 556 U.S. 778 (2009). Once invoked, the right may be waived if the accused initiates the communication. *Id.* Unlike the Fifth, the Sixth Amendment right to counsel is offense-specific and only attaches once charges have been brought. *Texas v. Cobb*, 532 U.S. 162, 167–68 (2001) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). In *Cobb*, the Supreme Court rejected a claim that the Sixth Amendment right to counsel

extended to those offenses which were "factually related" to charged offenses. *Id.* at 168. The Court held that any extension of the Sixth Amendment beyond "the four corners of a charging instrument" would only apply to those offenses that would be considered the same offense under the *Blockburger*[6] elements test. *Cobb*, 532 U.S. at 173. Here, although Appellant was represented by Capt PC at the time he was questioned, the Sixth Amendment did not extend Capt PC's representation to the new charge since it did not satisfy the elements test. Specifically, the new charge involved an entirely separate offense than the offenses in Swafford I. Capt PC's notice of representation, to the extent it constituted an invocation on behalf of Appellant, was not applicable to all future prosecutions.[7] *McNeil*, 501 U.S. at 175.

The last right to counsel we will examine arises from Mil. R. Evid. 305(c)(3). The critical question is whether Mil. R. Evid. 305(c)(3) afforded Appellant a right to counsel beyond those recognized by the Court's interpretation of the Sixth Amendment in *Cobb*. Mil. R. Evid. 305(c)(3) provides that:

> If an accused against whom charges have been preferred is interrogated on the matters *concerning* the preferred charges by anyone acting in a law enforcement capacity . . . and the accused requests counsel, or if the accused has appointed or retained counsel, any statement made in the interrogation, or evidence derived from the interrogation, is inadmissible unless counsel was present for the interrogation.

*Supplement to the Manual for Courts-Martial, United States*, Military Rules of Evidence (2012 ed.) (2012 *MCM Supp.*), pt. III, Mil. R. Evid, 305(c)(3) (emphasis added).

The fact that Mil. R. Evid. 305(c)(3) offers broader protections than the Sixth Amendment is clear on its face. The Rule's provision that it applies "if the accused has appointed or retained counsel" is plainly broader than the *Montejo* requirement to affirmatively request counsel. Before the Supreme Court's decision in *Montejo*, Mil. R. Evid. 305 protected military accused who had not affirmatively requested counsel. Recognizing the conflict, the drafters of the Rule offered guidance to clarify how the *Montejo* decision affected the existing Rule. The analysis of Mil. R. Evid. 305, (Drafters' Analysis), provides that "the protections of subsection (c)(3) *exceed* the constitutional minimal standard established by the Sixth Amendment as interpreted by the Supreme

---

[6] *Blockburger v. United States*, 284 U.S. 299 (1932).

[7] In light of this finding, we need not address Appellant's waiver in a Sixth Amendment context.

Court in *Montejo v. Louisiana*, 556 U.S. 778 (2009)." 2012 *MCM Supp*, App. 22, at A22-19 (emphasis added). The drafters specifically noted that, contrary to the Court's holding, a military accused "need not affirmatively request counsel." *Id*. By including this language, the drafters reaffirmed the preexisting Rule protecting a military accused's expanded right to appointed counsel under Mil. R. Evid. 305.[8] The Rule itself remained unchanged.

Unlike their clarification of the *Montejo* decision, the Drafters' Analysis provides no clarification as to how Mil. R. Evid. 305(c)(3) is to be read in light of *Cobb*, despite it being decided eight years earlier than *Montejo*. The Rule's language on matters concerning the preferred charge remained largely unchanged.[9] It is also worth noting that many other changes have been made to Mil. R. Evid. 305 to conform the Rule with changes to Supreme Court precedent since *Cobb* was decided in 2001. *See* 2012 *MCM Supp.*, App. 22, at A15. Despite these changes, we find no evidence that the President sought to align Mil. R. Evid. 305(c)(3) with the elements test limitations set forth in *Cobb*. We therefore rely on prior interpretations of Sixth Amendment protections afforded to military accused. *See generally United States v. Wattenbarger*, 21 M.J. 41, 43–45 (C.M.A. 1985) (finding that the Sixth Amendment may attach prior to the preferral of charges in unusual circumstances), *cert. denied*, 477 U.S. 904 (1986).

In light of these considerations, we hold that an accused's Sixth Amendment protections under Mil. R. Evid. 305(c)(3) are broader than those outlined by the Supreme Court in *Cobb*. This is not to suggest that the scope of Mil. R. Evid. 305(c)(3) is without limitation. It affords protections rooted in the Sixth Amendment and requires, at a minimum, a preferral of charges. *Id*. (citing *United States v. Adams*, 45 C.M.R. 175, 179 (C.M.A. 1972)).

Finally, we apply the Mil. R. Evid. 305(c)(3) right to counsel to Appellant's case. The only charges that had been preferred at the time Appellant was questioned were those tried in Swafford I. Appellant asserts that he nevertheless satisfied the requirements of Mil. R. Evid. 305(c)(3) because the charge in this case "concerned" the preferred offense. Appellant identifies several connections between Swafford I and the charged offense in this case to support his claim. These include the fact that both cases involved a charge for the use of mariju-

---

[8] *See* 2008 *MCM*, pt. III, Mil. R. Evid. 305(e)(2). The language in 305(e)(2) was added to 305(c)(3) following the reorganization of Mil. R. Evid. 305 in the 2012 *MCM Supp*.

[9] *E.g.,* 2012 *MCM*, pt. III, Mil. R. Evid. 305(d)(1)(B); 2008 *MCM*, pt. III, Mil. R. Evid. 305(d)(1)(B); 2005 *MCM*, pt. III, Mil. R. Evid. 305(d)(1)(B); 2002 *MCM*, pt. III, Mil. R. Evid. 305(d)(1)(B); 2000 *MCM*, pt. III, Mil. R. Evid. 305(d)(1)(B).

ana and were investigated by the same AFOSI agent as well as the chronological overlap between the pretrial processing of this case and the post-trial processing of Swafford I. We are not persuaded.

Unlike *Cobb*, there was no factual relationship between the charges in Swafford I and the charge in this case. In fact, Detective MB began Appellant's interview by specifically indicating that the offenses underlying Swafford I were "water under the bridge" and would not be discussed. Notably, it was Appellant who repeatedly brought up the use for which he was previously tried, both during the interview with AFOSI and at trial. Finally, Appellant suggests the interrogation could have jeopardized his pending PTA. We find this assertion without merit. Appellant's PTA, signed on 4 March 2016, only allowed for withdrawal from the agreement if he committed an offense between sentencing and action, not between the date of the agreement and action. Appellant's wrongful use in this case occurred between on or about 1 March and 29 March 2016. He was sentenced in Swafford I on 29 March 2016 and placed into confinement the same day. Moreover, Appellant's adjudged two-month sentence in Swafford I fell well below the sentence cap of six months. The convening authority's withdrawal from the PTA would have had no effect. In short, Appellant's rights to counsel under Mil. R. Evid. 305(c)(3) were not violated.

Appellant has failed to demonstrate that a motion to suppress would have been meritorious. *McConnell*, 55 M.J. at 482. There is consequently no need to analyze whether Maj AC's performance was deficient. *Id.* at 481. Appellant's claim of ineffective assistance of counsel fails for lack of prejudice. We leave for another day whether, in a different factual scenario, it is appropriate under Mil. R. Evid. 305(c)(3) to question a represented accused.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court